UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

SIDNEY DURELL HILL,

        Plaintiff,

v.

PATTI HUBBLE et al.,

        Defendants.
_____/

Case No. 2:23-cv-76

Honorable Paul L. Maloney

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104–134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Peterson, Cota, Kienitz, Sutinen, Johnston, and Schroeder. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment interference with mail claims, as well as his Fourteenth Amendment procedural and substantive due process and equal protection claims, his official capacity claims, and his conspiracy claims against remaining Defendants Patti Hubble, Jason Hubble, Chamberlin, and Loman.

**Discussion**

I.  **Factual Allegations**

Plaintiff Sidney Durell Hill is currently incarcerated by the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues Resident Unit Manager Patti Hubble, Deputy Warden Dennis Peterson, General Office Assistants Crystal Cota and Carrie Kienitz, Resident Unit Manager Jason Hubble, Prison Counselors Kieth Chamberlin and Cullen Loman, Business Office Manager Liisa Sutinen, Inspector Unknown Johnston, and Warden Sarah Schroeder in their individual and official capacities. (ECF No. 1, PageID.7–9.)

Plaintiff alleges that on June 27, 2022, he gave his legal mail to Defendant Patti Hubble in an attempt to send out a letter requesting subpoenas for an ongoing case in this Court (*Hill v. Larson*, No. 2:20-cv-206). Defendant Patti Hubble examined the documents and signed and dated the appropriate form acknowledging that the mail qualified for legal mail processing. Plaintiff then sealed the mail and gave it Defendant Patti Hubble for processing. However, later that evening, Plaintiff received the sealed envelope and expedited legal mail form with a sticky note written by Defendant Cota stating that his mail could not be sent out as expedited legal mail if it was in a regular stamped envelope. The next day, Plaintiff took the documents back to Defendant Patti Hubble's office and explained that in order for him to receive the benefits of expedited legal mail, he had to use the legal mail system and that he was entitled to do so regardless of whether he used a pre-stamped envelope. Defendant Patti Hubble stated that she was not going to send out subpoenas so that Plaintiff could sue her co-workers and that Plaintiff should get out of her office. Plaintiff complied. That afternoon, Plaintiff spoke to Defendant Peterson, who stated that he would investigate the situation. (ECF No. 1, PageID.9–11.)

On July 3, 2022, Plaintiff received notice that a J-Pay message he had sent to his grandmother seeking assistance in finding Corrections Officer T. Clark so that he could be served had been censored. On July 7, 2022, Plaintiff was interviewed by Defendant Chamberlin regarding a grievance he wrote on Defendant Patti Hubble for the handling of his legal mail. Defendant Chamberlin told Plaintiff that when he wrote grievances on Defendant Chamberlin's boss, staff were not going to send anything out for him, and that Defendant Chamberlin was considering sending Plaintiff to "the hole." (*Id.*, PageID.11).

Plaintiff wrote a grievance on the censorship of his J-Pay message on July 7, 2022, and again on July 14, 2022. Plaintiff was supposed to be interviewed by Defendant Chamberlin on the grievances, but when he saw it was Defendant Chamberlin, he refused to be interviewed and stated, "I am taking it to Step II," because he feared that Defendant Chamberlin would retaliate against him. (*Id.*)

On July 20, 2022, Plaintiff was interviewed by Defendant Loman on the censorship of his J-Pay message, but Defendant Loman stated, "I heard about the grievance you wrote on RUM Hubble, I should say you threatened me and send your ass to the hole, stop writing grievances before we really turn up the heat." (*Id.*, PageID.12.) Defendant Loman then told Plaintiff that he would investigate and send a response. (*Id.*)

On July 25, 2022, Plaintiff received a response stating that his J-Pay had been censored because he was seeking personal information on a prison employee. Plaintiff asserts that information regarding where a Corrections Officer is employed is considered public and that the censorship was merely retaliatory. (*Id.*)

On August 3, 2022, Defendant Loman told Plaintiff that his recent incoming mail would be rejected and that the contents, materials related to a paralegal course offered by the Blackstone

3

Career Institute, would be destroyed because Plaintiff had not gotten the facility's permission prior to enrollment. Plaintiff contends that the common practice is to store the materials while the prisoner seeks permission. (*Id.*)

Plaintiff told Defendant Loman that since he reviewed Plaintiff on the mail rejection, MDOC policy and rules prevented Defendant Loman from serving as the hearing officer. Defendant Loman responded by stating, "That's how we do it at Alger." (*Id.*, PageID.12–13.) Defendant Loman also stated, "When you write grievances on my boss and co-workers I'm not giving you shit." (*Id.*, PageID.13.) Plaintiff wrote a grievance on Defendant Loman. (*Id.*)

On August 8, 2022, Plaintiff was interviewed by Defendant Jason Hubble on the grievance he had written on Defendant Loman. Defendant Jason Hubble told Plaintiff that he was lucky that Hubble did not put Plaintiff in the hole for the grievance Plaintiff had written on his wife. (*Id.*) During the interview, Defendant Jason Hubble allowed Defendant Loman to enter the office, causing Plaintiff to feel intimidated. Plaintiff told Defendant Jason Hubble to send him to step II and went back to his cell and wrote a grievance on Defendant Jason Hubble. (*Id.*)

Based on the foregoing, Plaintiff states that he is asserting the following claims for relief: (1) First Amendment retaliation claims against Defendants Patti Hubble, Cota, Jason Hubble, Chamberlin, Loman, and Johnston; (2) First and Fourteenth Amendment interference with outgoing mail claims against Defendants Patti Hubble, Peterson, Cota, Kienitz, Johnston, Schroeder, and Sutinen; (3) Fourteenth Amendment equal protection claims against Defendants Patti Hubble and Johnston; and (4) claims against each of the named Defendants for engaging in a civil conspiracy. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

5

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Peterson, Sutinen, and Schroeder

Plaintiff fails to make specific factual allegations against Defendants Peterson, Sutinen, and Schroeder, other than to suggest that Defendants failed to adequately supervise their subordinates or respond to Plaintiff's grievances and complaints. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

6

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Peterson, Sutinen, and Schroeder encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's reclassification to administrative segregation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Peterson, Sutinen, and Schroeder are premised on nothing more than respondeat superior liability, they are properly dismissed.

### B.     Defendants Kienitz and Johnston

The Court notes that Plaintiff fails to allege any specific facts regarding Defendants Kienitz and Johnston in the body of his complaint. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Further, Plaintiff's claims against Defendants Kienitz and Johnston fall far short of the minimal

pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief") Because Plaintiff fails to allege any facts showing that Defendants Kienitz and Johnston engaged in any wrongful conduct, his claims against them are properly dismissed.

      **C.**      **Official Capacity Claims**

Plaintiff sues Defendants in both their individual capacities. Ordinarily, a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity; in this case, it is the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Nevertheless, an official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). However, as the Supreme Court has recognized, a suit under *Ex Parte Young* for prospective injunctive relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, as the Supreme Court repeatedly has recognized, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

In this case, Plaintiff's requests for declaratory and injunctive relief are moot because Plaintiff has been transferred from LMF to KCF. The Sixth Circuit has held that transfer to another

8

prison facility moots prisoner injunctive and declaratory claims. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying the rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96. Plaintiff fails to allege facts showing the existence of an official policy or practice in relation to his claims in this case. Therefore, because Plaintiff's claims for prospective relief are moot, his official capacity claims against Defendants are properly dismissed.

        **D.**     **Equal Protection Claim Against Defendant Patti Hubble**

Plaintiff claims that Defendant Patti Hubble's handling of his legal mail violated his Fourteenth Amendment right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

As explained below, Plaintiff's equal protection claim against Defendant Patti Hubble is subject to dismissal. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298)). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Plaintiff fails to allege any facts showing that he was treated differently than other similarly situated inmates. Therefore, he fails to state an equal protection claim against Defendant Patti Hubble.

### E. Procedural Due Process Claim against Defendant Loman

Plaintiff asserts that Defendant Loman confiscated and destroyed his paralegal course materials in violation of his procedural due process rights because Plaintiff had failed to seek permission to enroll in the program prior to ordering the materials. Plaintiff states that the common practice is to store course materials while the prisoner seeks permission to enroll in a particular course.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal

due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (eff. Apr. 26, 2021); MDOC Policy Directive 04.02.110, ¶ E (eff. Nov. 1, 2017). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or

intentional, of his personal property. Accordingly, Plaintiff's due process claim against Defendant Patti Hubble will be dismissed.

### F. First Amendment Claims

#### 1. Interference with Mail

Initially the Court notes that to the extent that Plaintiff is asserting interference with mail claims against Defendants Patti Hubble and Cota, such claims are properly dismissed. As noted above, Plaintiff alleges that on June 27, 2022, he gave his legal mail to Defendant Patti Hubble in an attempt to send out a letter requesting subpoenas in *Hill v. Larson*, No. 2:20-cv-206. (*See* Request and Legal Mail Disbursement Authorization, ECF No. 1-1, PageID.34–35.) Defendant Patti Hubble examined the documents and signed and dated the appropriate form acknowledging that the mail qualified for legal mail processing. (*Id.,* PageID.35.) Plaintiff then sealed the mail and gave it Defendant Patti Hubble for processing. However, later that evening, Plaintiff received the sealed envelope and expedited legal mail form with a sticky note written by Defendant Cota stating that his mail could not be sent out as expedited legal mail if it was in a regular stamped envelope. (*Id.*, PageID.33.) According to the note by Defendant Cota, although Plaintiff could not use the expedited legal mail system to send out his mail, he was free to send out his mail using the forever postage for no charge. (*Id.*) Therefore, because Plaintiff still had the ability to send out his mail and fails to allege any facts showing that he was damaged by his inability to use the expedited mail system, this claim lacks merit.

With regard to Plaintiff's claim that his J-Pay messages were censored, the Court notes that "isolated instances of interference with prisoners' mail" generally do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson,* No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)) (holding that an "isolated incident, without any evidence of improper motive or resulting

interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation")); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife. Such a random and isolated incident is insufficient to establish a constitutional violation"). Plaintiff's inability to send uncensored J-Pay messages on two occasions appears to have been isolated occurrences. Thus, these allegations are not sufficient to state a First Amendment claim.

2.     **Retaliation**

Plaintiff alleges that Defendants Patti Hubble, Cota, Jason Hubble, Chamberlin, Loman, and Johnston retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

A review of Plaintiff's complaint show that at this stage in the litigation, Plaintiff has alleged sufficient facts to support retaliation claims against Defendants Patti Hubble, Jason Hubble, Chamberlin, and Loman.

However, regarding Defendant Cota, Plaintiff's only allegations against Cota are that Cota advised Plaintiff that his mail could not be sent out as expedited legal mail if it was in a regular stamped envelope. Plaintiff fails to allege any facts showing that Defendant Cota took an adverse action against him because of a desire to retaliate against him.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotation marks omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("'[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims' that will survive § 1915A screening" (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Plaintiff merely alleges the ultimate fact of retaliation against Defendant Cota. Plaintiff has not presented any facts to support his conclusion that Defendant Cota retaliated against him because he engaged in protected conduct. Accordingly, he fails to state a retaliation claim against Defendant Cota.

### G. Substantive Due Process Claims

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit

14

in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation and interference with mail claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Likewise, the Fourteenth Amendment Equal Protection Clause would apply to protect Plaintiff's right to be treated the same as other similarly situated prisoners. Consequently, the Court will dismiss Plaintiff's substantive due process claims.

### H.    Conspiracy Claims

Plaintiff asserts that Defendants engaged in a conspiracy to violate his constitutional rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524

16

F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete occurrences over a period of time involving numerous individual prison staff. Plaintiff appears to rely entirely on a highly attenuated inference from the mere fact that he has been subjected to objectionable treatment by a variety of prison officials in various circumstances. As the Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. The Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). In light of the far more likely possibility that the various incidents were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Peterson, Cota, Kienitz, Sutinen, Johnston, and Schroeder will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment interference with mail claims, as well as his Fourteenth Amendment procedural and substantive due process and equal protection claims, his official capacity claims, and his conspiracy claims against remaining Defendants Patti Hubble, Jason Hubble, Chamberlin, and Loman. Plaintiff's

17

First Amendment retaliation claims against Defendants Patti Hubble, Jason Hubble, Chamberlin, and Loman remain in the case.

An order consistent with this opinion will be entered.

Dated:    April 15, 2024                                        /s/ Paul L. Maloney
                                                                             Paul L. Maloney
                                                                             United States District Judge